## Weinschenk *v.* Philadelphia Home Made Bread Company, Appellant.

*Negligence—Master and servant—Unguarded elevators—Fall— Death—Assumption of risk—Contributory negligence—Imminent danger—Changing conditions—Case for jury — Evidence — Ordinances—Pleading—Condition or kind of elevator—General use.*

1. In an action to recover damages for the death of plaintiff's husband, it appeared that deceased had been killed as a result of a fall down an elevator shaft. There was evidence that deceased was required to use the elevator from time to time; that there was an automatic device to close the door of the shaft when the elevator was not at the floor upon which decedent was working, but that the device was out of order, so that the shaft would remain open when the elevator was not in place; that the floor around the opening was slippery with grease; that the room was poorly lighted; and that two months prior to the accident, defendant had been notified that the device for locking the door of the shaft was defective. There was further evidence, introduced on behalf of defendant, that deceased was guilty of contributory negligence, and that the shaft had been negligently left open by a fellow servant, but a witness called for plaintiff in rebuttal testified that the witness as to the contributory negligence of the deceased could not have seen deceased when he described the actions upon which the defense relied to estab-

lish contributory negligence. The trial judge submitted the case to the jury who found a verdict for the plaintiff. Upon appeal, *held,* no error and judgment for plaintiff sustained.

2. If defendant was negligent in maintaining the condition as stated above, it cannot be said as matter of law that plaintiff's husband assumed the risks thereof, since the situation thus created was constantly subject to change, and the dangers, while ever present, were not always imminent.

3. In such case it was not error to admit in evidence a municipal ordinance regulating or relating to the maintenance of freight elevators, where the ordinance was introduced simply as bearing on the question of negligence, and the trial judge sufficiently protected defendant's rights by charging the jury in effect that the proof of the violation of the ordinance was not in itself proof of the negligence charged, but was merely evidence of municipal opinion as to matters on which the municipal authorities had acted and was to be considered with the other evidence in the case pointing to defendant's negligence.

4. Where in such case the plaintiff was not relying upon the violation of the ordinance to entitle her to recover, but upon the violation of defendant's duty to observe due care with regard to the elevator gates, it was not necessary to specially plead the ordinance to entitle the plaintiff to offer it in evidence.

5. Where in such case the negligence relied upon was not the maintenance of an improper and unsafe implement, but of an unsafe condition of the premises at the place of the accident, it was not necessary to plead or prove that the elevator in question was in fact more dangerous than those of the kind in general use.

Argued March 20, 1917. Appeal, No. 390, Jan. T., 1916, by defendant, from judgment of C. P. No. 4, Philadelphia Co., Dec. T., 1912, No. 3731, on verdict for plaintiff, in case of Sophie K. Weinschenk v. Philadelphia Home Made Bread Company, a Corporation. Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Trespass to recover damages for the death of plaintiff's husband. Before CARR, J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $5,616 and judgment thereon. Defendant appealed.

*Errors assigned* were rulings on evidence, instructions to the jury, the refusal to direct a verdict for defendant and to enter judgment for defendant n. o. v.

*William H. Peace,* for appellant.—The evidence was insufficient to establish defendant's negligence.

The ordinance was improperly admitted in evidence: Ubelmann v. American Ice Co., 209 Pa. 398; Riegert v. Thackery, 212 Pa. 86; Allen v. Torcolora Valley R. R. Co., 229 Pa. 97.

The deceased was guilty of contributory negligence: Lonzer v. Lehigh Valley R. R. Co., 196 Pa. 610; Keiser v. Lehigh Valley R. R. Co., 212 Pa. 409; Philadelphia & Reading R. R. Co. v. Schertle, 97 Pa. 450; Welsh v. Erie & Wyoming Valley R. R. Co., 181 Pa. 461.

*Ruby R. Vale,* with him *J. Edgar Wilkinson,* for appellee.—The evidence of negligence on the part of the defendant was of such a character as not only to make imperative its submission to the jury but also to carry conviction of its existence: Ferry v. Philadelphia Rapid Transit Co., 232 Pa. 403; Madden v. Lehigh Valley R. R. Co., 236 Pa. 104; Philadelphia & Reading R. R. Co. v. Huber et al., 128 Pa. 63; Glancy v. McKees Rocks Boro., 243 Pa. 216; Henderson v. Continental Refining Co., 219 Pa. 384; Dannals v. Sylvania Twp., 255 Pa. 156.

Where two causes combine, contribute or concur to produce injuries, a person is not relieved from liability because he is responsible for only one of such causes. Siever v. Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co., 252 Pa. 1; Wood v. Penna. R. R. Co., 177 Pa. 306; McKenna v. Citizen's Natural Gas Co., 198 Pa. 31; Eagle Hose Co. v. Priceburg Elect. Light Co., 33 Pa. Superior Ct. 581; Burrell Twp. v. Uncapher, 117 Pa. 353; Plymouth Twp. v. Graver, 125 Pa. 24; Deserant v. Cerillos Coal R. R. Co., 178 U. S. 409.

The city ordinance of 1908 was properly admitted in evidence: Erie City v. Schwingle, 22 Pa. 384; Seward

v. Harrisburg Boot & Shoe Mfg. Co., 20 Pa. D. R. 1064; Ubelmann v. American Ice Co., 209 Pa. 398.

The question of assumption of risk was for the jury: Madden v. Lehigh Valley R. R. Co., 236 Pa. 104; Valjago v. Carnegie Steel Co., 226 Pa. 514; Rummell v. Dilworth, 111 Pa. 343; Stewart v. Central R. R. of N. J., 235 Pa. 311; Vorhees v. Lake Shore & Mich. Southern Ry. Co., 193 Pa. 115; Humphreys v. Raleigh Coal & Coke Co., 73 W. Va. 495; Meloy v. Chicago & North Western Ry. Co., 77 Iowa 743; Craig v. Chicago & Alton R. R. Co., 54 Mo. App. 523; Mertz v. A. Leschen & Sons Rope Co., 174 Mo. App. 94; Benzing v. Steinway, 101 N. Y. 547; Warn v. New York Central & Hudson River R. R. Co., 80 Hun. 71; Hollingsworth v. Long Island R. R. Co., 91 Hun. 641; Mackie v. Webster Mfg. Co., 175 Ill. App. 385.

The question of contributory negligence was peculiarly and necessarily for the jury: McManamon v. Hanover Twp., 232 Pa. 439; Ferry v. Philadelphia Rapid Transit Co., 232 Pa. 403.


OPINION BY MR. JUSTICE MOSCHZISKER, May 7, 1917:

The plaintiff's husband died as a result of injuries received while engaged in the service of the defendant company; the wife sued, alleging negligence, and recovered a verdict upon which judgment was entered. The defendant has appealed.

Frank P. Weinschenk was employed as a dough mixer in defendant's bread bakery, where he had worked for about eight years prior to January 22, 1912, the date of the accident which caused his death; his duties were performed at night, and the fatality occurred between 4:30 and 5 a. m.; the room wherein he labored was a large apartment on the second floor of his employer's establishment, about 80 feet long and 45 feet wide; a freight elevator, which ran from the first to the third story, was located in the northwest corner of this room; on the floor in question, the elevator shaft was solidly enclosed

on three sides, and it could be entered only when approaching from the east; on the latter side were two gates, one a solid wooden structure extending from floor to ceiling, operated on rollers, which, when pushed aside by hand, exposed a slat gate, or guard, about five feet high, that moved vertically by pulleys and weights, and which, at the time of the accident, also had to be operated by hand; on the third floor a like guard worked automatically, so that, when the elevator either ascended or descended, this gate became locked in place, effectually barring an entrance into the shaft; originally the gate on the second floor was operated in the same manner, but it had become out of order to such an extent that it could be worked only by hand; it remained in this defective condition for at least one year prior to January 22, 1912, and possibly longer, although, "a couple of months before the accident," the president of the defendant company had been notified by an employee that, if the defect were not remedied, somebody would probably fall down the shaft; "right after the accident" this gate was found up, and "the floor close to the elevator" was then seen to be "smeary" and "slippery"; there is also other testimony to the effect that this floor was often in a "very slippery" condition, "especially around the elevator"; the plaintiff's husband was obliged to use the elevator from time to time, in the course of his usual employment; he worked at a dough mixing machine, located on the north side of this second floor room, about 40 feet east of the shaft, with a post between him and it; the room was illuminated by gas lights, with "ordinary plain—little burners," one being on this post, but on the side farthest from the shaft; two other lights were in front and one in the rear of the mixing machine; the testimony seems to indicate additional gas burners on the second floor, but, so far as we can understand the situation, these were located on the south side of the shaft and, ordinarily, were not used; there was no artificial light in the shaft itself, and, while the plaintiff probably had sufficient

light to observe the location of this enclosure, yet the strong indications are that, at night time, under the surrounding conditions, a person on the second floor would have difficulty in seeing whether or not the car, which was just an ordinary platform without sides, was actually in place; the elevator had no special attendant and was operated from time to time by any one who had occasion to use it; on the evening prior to his injury plaintiff's husband, who was then a man in good health, about 45 years of age, left home in a "happy and jolly" state of mind; he went to his customary place of employment, and was there last seen just before the accident; fifteen minutes later he was found in an unconscious condition, lying on the elevator platform, which was then at the level of the first floor; his skull was crushed and he was otherwise badly injured; beside him was a can of milk and a box of yeast, the latter of which he may have been carrying; he was taken to a hospital and, two days thereafter, died as a result of his injuries; so far as the evidence shows, the last person to use the elevator prior to the accident was one Jacobs, the defendant's engineer.

The man just referred to testified for the defendant that he saw Weinschenk fall down the elevator shaft under circumstances which, if believed, convicted the latter of clear contributory negligence; but Thomas McCormick, a witness called on behalf of plaintiff, in rebuttal, testified that Jacobs, from the spot where he was standing, could not have seen Weinschenk fall, and the court below left the question of the credibility of these witnesses to the jury, saying as to Jacobs, "If you believe him . . . . . ., your verdict should be for the defendant." After this, however, the trial judge pointedly referred to the value of cross-examination, and strongly intimated that he entertained a grave doubt concerning the veracity of the witness in question, ending his instructions by the statement: "I do not pass any opinion as to the truth or falsity of his testimony; it is for you,

and you only. I speak of these matters that I may help you, if I can, to reach a righteous and proper verdict."

We must assume from the verdict rendered that the jury did not give credence to the testimony depended upon by defendant, but accepted the theory of the plaintiff that the accident happened as a result of the combined negligence of the former and its engineer, Jacobs. True, according to this theory, there was no eye witness to the accident; but that situation is present in many cases where verdicts for the plaintiff have been affirmed, among others: Philadelphia & Reading R. R. Co. v. Huber et al., 128 Pa. 63; Henderson v. Continental Refining Co., 219 Pa. 384; Millum v. Lehigh & Wilkes-Barre Coal Co., 225 Pa. 214; Tucker v. Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co., 227 Pa. 66; McManamon v. Hanover Twp., 232 Pa. 439; Madden v. Lehigh Valley R. R. Co., 236 Pa. 104; Dannals v. Sylvania Twp., 255 Pa. 156.

If Jacobs left the gates on the second floor open, when he moved the elevator from that level, just prior to Weinschenk's fall, then we have a case of the former's carelessness combined with the negligence of defendant in maintaining a dangerous and unsafe condition at the point of the accident; and such a combination would not defeat plaintiff's right of recovery: Siever v. Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co., 252 Pa. 1; Kaiser v. Flaccus, 138 Pa. 332; Wallace v. Henderson, 211 Pa. 142, 146; Deserant v. Cerillos Coal R. R. Co., 178 U. S. 409, 420. Moreover, if defendant was negligent in maintaining the condition just referred to, since the situation thus created was constantly subject to change, and the dangers, while ever present, were not always imminent, it could not be said as a matter of law that plaintiff's husband assumed the risks thereof: Valjago v. Carnegie Steel Co., 226 Pa. 514, 519.

Beach v. Hyman, 254 Pa. 131, is largely depended upon by appellant. As that case was tried, it appears that the surrounding conditions presented no special ele-

ments of danger; further that the elevator shaft there in question was equipped with what, so far as the evidence showed, were proper gates; and in point of fact there were no contentions to the contrary. Under these circumstances we held that, since no knowledge or notice had been brought home to the defendants that the particular gate which caused the accident had, in fact, been carelessly suffered to remain open, negligence upon the part of the latter was not shown. In the present instance, however, there was evidence from which the jury could find that due care in the maintenance of the elevator gate had not been observed by the defendant, and that, under the surrounding conditions, such negligence was a concurring cause of the accident; thus the two cases are distinguished.

The defendant contends that the court below erred when it admitted in evidence a certain ordinance of councils regulating the construction and maintenance of freight elevators in the City of Philadelphia. So far as the record shows, while the ordinance was allowed in evidence, yet a copy was not physically handed to the jury for use in their deliberations. The attention of the jury was called only to certain parts of the ordinance, namely, those providing that "every freight elevator shall have its hatchway surrounded by vertical enclosures and gates," and that "all gates must be self-closing, also fitted with a device to prevent them being raised until the platform is at the floor landing." When these excerpts were read in court, counsel for plaintiff particularly stated: "I desire it noted of record that I am not asking for the admission of this ordinance to take away from the defendant any right of defense at all, but simply as bearing on the question of negligence; and when I say any defense, I mean specifically the defense of assumption of risk." Furthermore, in charging the jury, the trial judge stated: "Proof of the violation of an ordinance regulating or relating to conduct alleged to have been negligent is not in itself proof of the negligence

charged. The ordinance and its violation are matters of evidence to be considered with all other evidence in the case; but this rule is limited to cases in which the ordinance relates to the alleged negligent act under consideration......Ordinances and their violation are admissible, not as substantive and sufficient proof of the negligence of the defendant, but as evidence of municipal expression of opinion on matters as to which the municipal authorities have acted......and are to be taken into consideration with all the other facts in the case."

The defendant argues that, since the ordinance under consideration was not specially pleaded, it should not have been accepted in evidence at all. If plaintiff were depending upon a violation of the ordinance, as the substance of her case, there would be force in this position; but she does not so depend. The violation of defendant's duty to observe due care in relation to the elevator gates would give rise to an action for negligence on common law principles, without regard to the terms of the ordinance, and the present suit was instituted and tried upon this theory; but the ordinance points out what the municipality conceives to be due care in that respect; hence its relevancy. As previously stated, when the trial judge submitted this ordinance to the jury, he took care to say that it was evidence only of an expression of municipal opinion appropriate to the facts in the case as presented by the plaintiff. The latter produced evidence to prove the facts hereinbefore indicated, and the question of their existence or non-existence was submitted to the jury; on these facts, she contended that, under surrounding conditions, it was negligence for defendant to maintain and permit the operation of this freight elevator with a defective gate, particularly when no attendant was in charge of the car. Since the inner or guard gate of the elevator, on the second floor, had carelessly been permitted to become out of order to such an extent that it was, in effect, non-automatic, it may be seen that the ordinance relates, in a measure at

least, to the alleged negligent acts under investigation, suggesting a municipal view upon the subject in hand coinciding with that contended for by the plaintiff; and, to this extent, it was relevant. In other words, the municipal view, for what it was worth, was proper for the jury's consideration. In negligence cases, jurors are constantly called upon to exercise their general knowledge of the affairs and conditions of life with which they in common with others in the community come in more or less constant contact; and thus to determine whether or not carelessness directly contributing to the accident under investigation has been proved. This is all that the jurors were asked to do in the present instance; and the ordinance was introduced simply as an expression of municipal opinion to aid them in their deliberations. In this we see no error: Lederman et ux. v. Penna. R. R. Co., 165 Pa. 118, 121, 125-6; Ubelmann v. American Ice Co., 209 Pa. 398, 400.

The case at bar was not tried upon the theory of the maintenance of an improper and unsafe implement, but, rather, of an unsafe and dangerous condition of affairs at the place of the accident; hence it was not necessary to plead or prove that the elevator in question was, in fact, more dangerous than those of the kind in general use. Finally, the relevant issues were submitted to the jury without error prejudicial to the defendant; and, considering the age and earning capacity of plaintiff's decedent, the verdict of $5,616 is not an excessive one for this mother and six children. The former verdict rendered in their favor was $500 more; in all probability, it was set aside to permit a second jury to pass upon the credibility of defendant's witness, Jacobs, and the present verdict shows that his testimony was rejected a second time. The case is a close one in several respects; but, on its peculiar facts, we are not convinced it could properly have been taken from the jury, or that the proof was insufficient to support the verdict.

The assignments of error are all overruled, and the judgment is affirmed.